## G. W. McDonald v. The State.

### No. 7058.   Decided December 19, 1923.

**Refusal to Dip Stock—Insufficiency of the Evidence.**

Where, upon trial of failing to dip livestock under the Act of the Thirty-sixth Legislature, the evidence showed that the refusal to dip such livestock was not wilfully done, and no intent on the part of defendant to disobey or evade the law the conviction could not be sustained.

Appeal from the County Court of Palo Pinto. Tried below before the Honorable E. L. Pitts.

Appeal from a conviction of refusal to dip livestock; penalty a fine of $25.

The opinion states the case.

No brief on file for appellant.

*R. G. Storey,* Assistant Attorney General, for the State.

MORROW, Presiding Judge.—The offense is the refusal to dip stock; punishment fixed at a fine of twenty-five dollars.

The date of the offense is the 3rd day of August, 1921.

The information contains a number of counts and covers fourteen typewritten pages of the record. The offense is founded upon the averment, in substance, that the appellant was the owner and possessor of a number of head of cattle; that some of them had fever-carrying ticks upon them; that the cattle were situated in Palo Pinto County; that that county, by an election regularly called and ordered held, had decided to enter upon the matter of tick eradication; that the Live Stock Sanitary Commission of Texas had been so advised; that the appellant's cattle had been inspected and found to be in a condition which rendered it necessary that they be dipped and that notice to this effect had been given, and that there had been a failure or refusal to comply with the demand.

The law in force at the time the offense is charged to have been committed seems to have been embraced in Chapter 60 of the General Laws of the 35th Legislature. Certain sections were added to Chap. 12, Acts of the 1st Called Sess., 35th Leg., by the Acts of the 36th Leg., 3rd Called Session.

The State's evidence is sufficient to show that the law requiring that cattle be dipped under the terms of the statute was in force in Palo Pinto County, and that the law had been complied with as to the necessity for and manner of issuing notice to the appellant to dip his cattle. To show that they were not dipped, the State relied upon the testimony of the witness McClure, who was the dipping inspector in the territory which included Palo Pinto County. From his testimony, it appears that the appellant's cattle were dipped twice during the month of August, 1921, twice during the month of September, once during the month of October, and twice during the month of November; that on the last dipping there were dipped 828 head of cattle; that on one occasion there were only 701 head dipped; that other dippings ranged from 784 to 818 head. The witness also said that he knew that appellant owned about 830 head of cattle and that all of them were not dipped. He concluded since there were 828 head dipped on one occasion and only 701 on another that all of them were not dipped on that occasion. By the same process of reasoning, on each occasion when less than 828 head were dipped, some of the cattle were omitted. He also testified that from four to six hands were employed by the appellant to assist in the gathering and dipping of the cattle; that the witness himself assisted on some occasions; that some of the appellant's pasture was rough and some was open mesquite country; that from his experience all of the cattle could have been gathered and dipped.

From the testimony of Adams, a witness for the appellant, we quote:

"I live near Palo Pinto and worked for Mr. McDonald all of last year. I assisted in the dipping of Mr. McDonald's cattle every time they were dipped. Every time that the cattle were dipped, Mr. McDonald gave us instructions to be sure to dip every head of his cattle, not to overlook a one. There were always from four to six hands at these dippings, and Mr. McDonald instructed us all along this line. We always tied to get all of his cattle."

CROSS EXAMINATION:

"I do not know whether we got all of the cattle each time or not. We did our best."

REDIRECT:

"Mr. McDonald's pastures, as a rule, are very rough with lots of timber, rocks and boulders and breaks, especially along the creeks

and branches. In the rough part of his pasture, it is very hard to gather cattle. It is very hard to locate them, and after locating them, it is very hard to drive them out.''

Two other witnesses gave like testimony.

Appellant's son testified thus:

''My name is C. W. McDonald. I am the son of G. W. McDonald, the defendant in this case. My father is now about 73 years of age, and is feeble. He cannot ride a horse for any considerable distance, a mile or two I would say, would be about as far as he could stand it.

During all of the dippings, except possibly the last fall, I assisted in the dippings of my father's cattle. In fact, I was in charge and representing my father. At each of these dippings, my father gave me, as well as the other hands, numbering from four to six, instructions to dip all of his cattle, not to overlook any. This was done at each and every dipping. He explained to us that he was paying us for this work and wanted us to be sure to get all of his cattle. These instructions, we tried to carry out, and did the best we could. I do not know just the exact number of cattle that my faher owned, but I do know that we dipped everything that we could find at each of the dippings.''

#### CROSS EXAMINATION:

''No, I would not say that we dipped every head every time because I do not know. We did the best we could in this respect.''

The appellant testified as follows:

''My name is G. W. McDonald. I reside in Palo Pinto, Texas. I have lived here for close to fifty years. I am the defendant in this case. I am now 73 years of age, and on account of partial paralysis in my legs, or at least some kind of trouble, I am not able to ride horseback to any extent. I might ride a mile or two, but that would be all. I have been dipping my cattle since long before the dipping law went into effect. In fact, I built the first vat that was ever built in Palo Pinto County. I realize the importance of dipping, and really want to clean up my pastures. At each of the dippings where I was ordered to dip, I instructed the hands working for me, numbering from four to six, at each dipping, to be sure and get every head of cattle, not to overlook any of them; that that was what I was paying them for, and I wanted them to get everything. I did not want any of my cattle not to be dipped. During last fall the grass was very short, and the cattle scattered throughout all of the pastures. These pastures are very rough. . . . You can't ride horseback through there, except along the trail. It is very hard to get the cattle out of those places, that is, along Harris Branch and Eagle Creek. My pasures out there aggregate about four thousand acres of land.''

CROSS EXAMINATION.

"Yes, a few days ago I rode up to my windmill north of town. This is a half to three-quarters north of the town of Palo Pinto. I rested while there and then rode back. I am compelled to ride from my house down to my store, a distance of only about 300 yards. I do not come home to my dinner. It is brought to me.

I do not know just the exact number of cattle I own, and I do not know that each and every one was dipped at these dippings, but I do know that I hired hands for that purpose and gave them instructions to gather and dip all of my cattle. I am not opposed to dipping. In fact, I want my pastures cleaned up."

In the penal clause of the statute under which the prosecution is maintained, this is said: "Any person owning, controlling or in charge of any domestic animal or animals which shall be required to be dipped under any of the provisions of this Act, who shall wilfully fail or refuse to dip in the official dips . . . shall be deemed guilty of a misdemeanor." (Acts of 35th Leg., Chap. 60, Sec. 22.) See also Acts of 36th Leg., 3rd Called Sess., Chap. 38.

There is some variety in the signification of the word "wilfully" governed by the context of the statute in particular cases and the nature of the subject to which it relates. In the present instance, it is conceived that in the absence of some intent or design not to dip his cattle or permit them to be dipped, appellant would not have been guilty within the terms of the statute. See Cyc. of Law & Proc., Vol. 40, p. 938; Richardson v. State, 5 Texas Crim. App., 474; Lane v. State, 16 Texas Crim. App. 172; Thomas v. State, 14 Texas Crim. App., 200; Fuller v. State, 48 Texas Crim. Rep., 300.

The evidence seems to repel an intent on the part of the appellant to disobey or evade the law. The nature of the enterprise, considering the age and infirmities of the appellant, precluded his performing the act of gathering and dipping the cattle in person. There is no suggestion that he was remiss in supplying competent hands to perform the physical labor incident to gathering and dipping the cattle. The State's witness who supervised the dipping and at times took part in gathering the cattle, does not question either the fact that the hands were furnished or that they were competent. That they were instructed by the appellant to omit none of the cattle is made evident from the facts. In construing other statutes imposing the duties upon property owners, a construction so rigid as that applied upon the trial of the appellant has not been given. See Vaughn v. State, 86 Texas Crim. Rep., 255; Axtell v. State, 86 Texas Crim. Rep., 264, 216 S. W. Rep., 394.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*